IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEVIN RAMEY, individually and on behalf of other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NAVAJO EXPRESS, INC.,<br><br>Defendant. | Case No.: 1:24-CV-05541<br><br>**Honorable LaShonda A. Hunt**<br><br>FIRST AMENDED CLASS ACTION COMPLAINT |

Plaintiff Kevin Ramey ("Plaintiff") files the following First Amended Class Action Complaint against Defendant Navajo Express, Inc. ("Defendant"):

### NATURE OF THE ACTION

1. This is an action by Plaintiff, individually and on behalf of other persons similarly situated ("class members") to obtain statutory damages and other equitable relief under the Illinois Biometric Information Privacy Act ("BIPA" or "the Act"). Plaintiff's allegations are made based on his personal knowledge from his experience working for Defendant and, as to all other matters, upon information and belief, including based on investigation by counsel.

2. Plaintiff and class members are truck drivers who worked for Defendant within the State of Illinois and were subject to the unlawful biometric scanning and storage practices of Defendant within the State of Illinois.

3. Defendant is a trucking company that operates a fleet of trucks and tractor-trailers including within the State of Illinois. Using an in-cab biometric camera that points towards the driver of the truck—Plaintiff and other class members—Defendant captures, collects, or otherwise uses the biometrics of Plaintiff and other class members, without their informed written consent

1

as required by law, in order to track their employment and work performance. When carried out in Illinois, these practices violated BIPA as to Plaintiff and the class members.

4. Defendant's biometric cameras work by extracting biometric information from individuals, such as facial geometry, retina scans, or iris scans, to monitor their work performance while driving.

5. BIPA defines a "biometric identifier" to include, *inter alia*, scans of facial geometry, retina scans, and iris scans. "Biometric information" is any information based on a biometric identifier, regardless of how it is converted or stored. 740 ILCS § 14/10.

6. Plaintiff and class members were required to provide Defendant with their personalized biometric identifiers and the biometric information derived therefrom ("biometric data").

7. Plaintiff and class members were not notified where their biometrics were stored, for how long Defendant would keep the biometrics, and what might happen to this valuable information.

8. The State of Illinois recognized the value and importance of preserving people's biometric data when it passed the Illinois Biometric Information Privacy Act.

9. Unlike other forms of personal identification, such as photo IDs or passwords, biometrics are immutable aspects of our bodies. This makes them a promising source of future identification-related technology, particularly in our increasingly insecure technological world. While this makes biometrics a convenient tool for employers seeking to identify and monitor individuals in the workplace, it also risks the wrongful use and abuse of an individual's distinctive biometric identifiers and biometric information and invades an individual's right to privacy and control of their immutable characteristics.

10. When it passed BIPA in 2008, the Illinois Legislature found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric facilitated transactions." 740 ILCS 14/5(c).

11. The Legislature also found that "[a]n overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information," that the "full ramifications of biometric technology are not fully known," and that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(d), (f), and (g).

12. If Defendant insists on collecting and storing its workers' biometrics, Defendant must comply with the BIPA. This includes (1) notifying workers the practice is taking place; (2) informing workers of how the practice is implemented; (3) obtaining written consent from the workers to collect and store their biometric data; (4) maintaining their workers' biometric data in a sufficiently secure manner; and (5) maintaining a publicly available disclosure of how the biometric data will be handled and destroyed.

13. Unfortunately for the Plaintiff and class members, none of these directives were followed, causing injuries in violation of BIPA. Accordingly, Plaintiff brings this action individually and on behalf of class members to obtain statutory damages and injunctive relief for violations of the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1 *et seq*.

## PARTIES

14. Plaintiff is an Illinois citizen who worked for Defendant as a truck driver in and from Illinois during 2021 and 2022 and was subject to the same biometric-collection practices as other of Defendant's truck drivers within the State of Illinois.

15. Defendant is a for-profit Colorado corporation with its principal place of business in Colorado that does business in the State of Illinois, including reaching into Illinois to recruit and hire truck drivers as well as regularly operating its trucks within Illinois.

## JURISDICTION AND VENUE

16. This Court has specific jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting activities in Illinois and because Defendant's contacts with Illinois give rise to and are related to Plaintiff's claims. Defendant does business extensively in Illinois, including soliciting and hiring Illinois residents as truck drivers and directing its employed drivers to operate its trucks within Illinois. Furthermore, Defendant's unlawful conduct in violation of BIPA herein sued upon occurred in Illinois.

17. Plaintiff was hired by Defendant to work as a truck driver after responding to Defendant's online advertisement targeted towards Illinois residents. Defendant was aware that Plaintiff was an Illinois resident when he was hired, mailed his W-2 forms to his Illinois address, and paid Illinois state income taxes on Plaintiff's earnings.

18. Defendant provided Plaintiff with route and fuel solutions for his runs that took him into and through Illinois. Defendant assigned Plaintiff to jobs with destinations within Illinois, including Chicago. Plaintiff drove Defendant's vehicles in Illinois and even parked them near his Illinois home on occasion.

19. Defendant also seeks to hire Illinois residents as drivers to this day. According to Defendant's hiring website located at drivenavajoexpress.com, Defendant is seeking to hire drivers throughout the State of Illinois including in Chicago, Decatur, Springfield, Quincy, Bloomington, Peoria, Naperville, Rockford, and Marion.[1] Defendant also advertises on other websites seeking drivers located in Illinois.[2]

20. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

21. Defendant uses biometric cameras in the cabs of its trucks to monitor the work of its truck drivers, including Plaintiff and class members.

22. During Plaintiff's employment with Defendant (and within the five years preceding the filing of Plaintiff's complaint), Defendant used AI powered cameras within its trucks that use facial biometrics to continuously remotely monitor its employees' performance and driving behaviors.

23. Defendant has a separate biometric camera installed in each of its trucks to monitor each driver. This allows Defendant to associate the information from each of its respective biometric cameras with a particular individual.

24. Defendant's cameras collect and store the biometric data of Defendant's workers by scanning their facial geometry in order to monitor their behavior while driving. For example, the camera in the truck driven by Plaintiff for Defendant would provide an in-cab alert and light up if the Plaintiff looked away briefly or wore his reading glasses, which apparently interfered

---

[1] *See* https://drivenavajoexpress.com/jobs/results/cdd942e58a7e6289e7d97d8f1700bbce/ (last visited Aug. 22, 2024).
[2] *See, e.g.,* https://us.jora.com/job/CDL-A-Driver-eeeda01bbae39a390a6d5511e7aa5f5a; https://us.jora.com/job/CDL-A-Driver-fe2f3b53371989c368842856561016ca; https://us.jora.com/job/CDL-A-Driver-32d111b94808ab9ac868b900cfc426cd; https://www.jobsintrucks.com/cgi-local/driversearch.cgi?action=ViewJobDetails&JobIndNum=27900638&from=link (all visited Aug. 22, 2024).

with the camera's scanning of his facial geometry. The camera would also transmit an alert back to Defendant when it detected a supposedly unsafe event involving the Plaintiff.

25. Defendant would contact Plaintiff about the alerts to give feedback on his work performance as relayed through the biometric cameras, including stating on one occasion that the camera had generated hundreds of safety alerts about Plaintiff.

26. Plaintiff was told by the Defendant's safety manager that the camera was reading his eye placement and that the glare from his reading glasses may be interfering with the camera's scans of his eyes and face.

27. These collections of Plaintiff's facial geometry occurred whenever Plaintiff drove for Defendant, including within the State of Illinois.

28. Plaintiff had to undergo biometric collection and monitoring as a requirement for employment and managerial purposes, as each of Defendant's vehicles came equipped with a biometric camera.

29. Defendant did not inform in writing either Plaintiff or class members that their biometric data was being recorded, obtained, collected, and/or stored.

30. Defendant did not inform in writing either Plaintiff or class members the specific purpose and length of term for which their biometric data would be collected, stored, and/or used.

31. Defendant did not obtain Plaintiff's or class members' written consent to record, collect, obtain, and/or store Plaintiff's and class members' biometric data. Likewise, Defendant never provided Plaintiff with the requisite statutory disclosures nor an opportunity to prohibit or prevent the collection, storage or use of Plaintiff's unique biometric identifiers and/or biometric information.

32. Defendant did not disclose to Plaintiff, class members, or the public its written retention schedule and guidelines for permanently destroying workers' biometric data.

33. Defendant did not disclose to Plaintiff or class members, in writing, of the specific purpose and length of term for which it was collecting, storing, and/or using class members' biometric data.

## CLASS ACTION ALLEGATIONS

34. Plaintiff seeks to certify a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of the following class:

> *"All individuals who worked as drivers for Defendant in Illinois during the relevant statute of limitations and were subject to Defendant's driver-facing camera monitoring system."*

35. Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officers or directors.

36. Class treatment in this case is appropriate because:

    (a) Pursuant to Rule 23(a)(1), the number of persons within the class is believed to amount to more than forty persons. It is, therefore, impractical to join each member of the class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the class is ascertainable and identifiable from Defendant's records.

(b) There are questions of fact or law common to Plaintiff and the class, which common questions predominate over any questions affecting only individual members; these common questions of law and fact include, without limitation:

  i. Whether the camera monitoring system utilized by Defendant collected drivers' facial biometrics;

  ii. Whether Defendant's conduct is subject to BIPA;

  iii. Whether Defendant properly informed Plaintiff and the Class that it collected, used, and stored their biometric identifiers and/or biometric information;

  iv. Whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class' biometric identifiers and/or biometric information;

  v. Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

  vi. Whether Defendant used Plaintiff's and the Class' biometric identifiers and/or biometric information to identify them;

  vii. Whether Defendant destroyed Plaintiff's and the Class's biometric identifiers and/or biometric information once that information was no longer needed for the purpose for which it was originally collected;

8

      viii. Whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently; and

      ix. Whether Plaintiff and the Class are entitled to damages and injunctive relief.

(c) Given the fact that Defendant's workers will likely risk their jobs and/or livelihoods to enforce their rights under the BIPA, members of the class will be reluctant to bring forth claims for unpaid wages and notice violations for fear of retaliation;

(d) The class representative, class members and Defendant have a commonality of interest in the subject matter and remedies sought and the Plaintiff is able to fairly and adequately represent the interest of the class. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions creating a hardship on the class members, the Defendant and the Court. Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of such a Class. Neither Plaintiff nor Plaintiff's counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class.

(e) The class action provides a superior method for fairly and efficiently adjudicating this controversy because many class members cannot feasibly vindicate their rights by individual suit because the value of their recoveries are

outweighed by the burden and expense of litigating against the corporate Defendant. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with BIPA.

37. Therefore, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

### COUNT I
### VIOLATIONS OF ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT, 740 ILCS 14/1, *et seq.*
### On behalf of Plaintiff and the Class

38. Plaintiff incorporates by reference each of the preceding allegations as though fully set forth herein.

39. Defendant is a private entity under BIPA.

40. Defendant recorded, collected, and stored Plaintiff's and class members' biometric identifiers and biometric information as defined by 740 ILCS § 14/10 of the Act while they drove for Defendant within Illinois. Every instance of Defendant collecting, capturing, storing, and/or

sharing Plaintiff's and class members' biometric identifiers and biometric information constitutes a violation of the Act.

41. Defendant violated Section 14/15(a) of the Act by failing to develop and/or make public its written retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA.

42. Defendant violated Section 14/15(b) of the Act by collecting, capturing, obtaining and storing Plaintiff's and class members' biometric identifiers and/or information without informing them in writing and obtaining a written release, that:

    (a) The biometric data was being recorded, obtained, collected, or stored; and

    (b) The specific purpose and length of term for which the biometric data was being collected, captured, obtained, and/or stored.

43. Defendant's conduct was negligent and likely willful or reckless because BIPA has been the law in Illinois since 2008 and, on information and belief, Defendant violated the statute on numerous occasions in the State of Illinois by repeatedly scanning and storing the facial geometry of Plaintiff and class members over the course of months or years. Defendant's employees, including its safety manager, were aware that its biometric cameras were collecting the facial geometry of its drivers.

44. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1).

45. Accordingly, Defendant is liable to Plaintiff and class members for statutory liquidated damages. 740 ILCS § 14/20(1).

**PRAYER FOR RELIEF**

Plaintiff asks the court to enter judgment in Plaintiff's favor against Defendant and issue an order:

a. Certifying this case as a class action, naming Plaintiff as class representative and Plaintiff's counsel as class counsel;

b. Declaring that Defendant has violated the Illinois Biometric Information Privacy Act, and enter a judgment in favor of Plaintiff and the class;

c. Awarding statutory damages of $5,000 for each willful or reckless violation of the Act, $1,000 for each negligent violation of the Act;

d. Awarding injunctive and equitable relief as necessary to protect the interests of the Plaintiff and the class;

e. Awarding reasonable attorneys' fees and costs of this action;

f. Awarding pre-judgment and post-judgment interest on all monetary amounts awarded in this action; and

g. Awarding such other general and equitable relief as this Court deems equitable and just.

*Respectfully submitted,*

*/s/ William H. Beaumont*

William H. Beaumont (#6323256)
Aaron S. Welo (#6341591)
BEAUMONT LLC
107 W. Van Buren, Suite 209
Chicago, IL 60605
Telephone: (773) 832-8000
whb@beaumont-law.com
asw@beaumont-law.com
*Attorneys for Plaintiff*